**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Case No. 10-cv-01075-REB-KMT

LAWRENCE COUNTRYMAN, on behalf of himself and all others similar situated,

     Plaintiff,

v.

FARMERS INSURANCE EXCHANGE, an insurer, and owner of MID-CENTURY
INSURANCE COMPANY, a California corporation, and
MID-CENTURY INSURANCE COMPANY, a California corporation,

     Defendants.

---

## ORDER GRANTING MOTION TO DISMISS

**Blackburn, J.**

The matter before me is **Defendants Farmers Insurance Exchange and Mid-Century Insurance Company's Supplemental Motion To Dismiss** [#97][1] filed March 21, 2012.  I grant the motion.

### I.  JURISDICTION

I have subject matter jurisdiction pursuant to 28 U.S.C. § 1332 (diversity of citizenship).

### II.  STANDARD OF REVIEW

When ruling on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), I must determine whether the allegations of the complaint are sufficient to state a claim within

---

[1]  "[#97]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's electronic case filing and management system (CM/ECF).  I use this convention throughout this order.

the meaning of Fed. R. Civ. P. 8(a).  For many years, "courts followed the axiom that

dismissal is only appropriate where 'it appears beyond doubt that the plaintiff can prove

no set of facts in support of his claim which would entitle him to relief.'"  *Kansas Penn*

*Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Conley v.*

*Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)).  Noting that this

standard "has been questioned, criticized, and explained away long enough," the

Supreme Court supplanted it in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 562,

127 S.Ct. 1955, 1969, 167 L.Ed.2d 929 (2007).  Pursuant to the dictates of *Twombly*, I

now review the complaint to determine whether it "'contains enough facts to state a

claim to relief that is plausible on its face.'"  *Ridge at Red Hawk, L.L.C. v. Schneider*,

493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Twombly*, 127 S.Ct. at 1974).  "This

pleading requirement serves two purposes:  to ensure that a defendant is placed on

notice of his or her alleged misconduct sufficient to prepare an appropriate defense, and

to avoid ginning up the costly machinery associated with our civil discovery regime on

the basis of a largely groundless claim."  *Kansas Penn Gaming*, 656 F.3d at 1215

(citation and internal quotation marks omitted).

As previously, I must accept all well-pleaded factual allegations of the complaint

as true.  *McDonald v. Kinder-Morgan, Inc.*, 287 F.3d 992, 997 (10th Cir. 2002).

Contrastingly, mere "labels and conclusions or a formulaic recitation of the elements of

a cause of action" will not be sufficient to defeat a motion to dismiss.  *Ashcroft v. Iqbal*,

556 U.S. 662, 678 , 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (citations and

internal quotation marks omitted).  *See also Robbins v. Oklahoma*, 519 F.3d 1242,

1247-48 (10th Cir. 2008) ("Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.") (quoting **Twombly**, 127 S.Ct. at 1974) (internal citations and footnote omitted).  Moreover, to meet the plausibility standard, the complaint must suggest "more than a sheer possibility that a defendant has acted unlawfully." **Iqbal**, 129 S.Ct. at 1949.  **See also Ridge at Red Hawk**, 493 F.3d at 1177 ("[T]he mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims.") (emphases in original).  For this reason, the complaint must allege facts sufficient to "raise a right to relief above the speculative level." **Kansas Penn Gaming**, 656 F.3d at 1214 (quoting **Twombly**, 127 S.Ct. at 1965).  The standard will not be met where the allegations of the complaint are "so general that they encompass a wide swath of conduct, much of it innocent." **Robbins**, 519 F.3d at 1248.  Instead "[t]he allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." **Id.**

The nature and specificity of the allegations required to state a plausible claim will vary based on context and will "require[] the reviewing court to draw on its judicial experience and common sense." **Iqbal**, 129 S.Ct. at 1950; **see also Kansas Penn Gaming**, 656 F.3d at 1215.  Nevertheless, the standard remains a liberal one, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." **Dias v. City**

*and County of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (quoting *Twombly*, 127

S.Ct. at 1965) (internal quotation marks omitted).

### III.  ANALYSIS

This is a putative class action for breach of insurance contract and related

causes of action.  Defendants issued automobile insurance policies to plaintiff and other

similarly situated individuals in Colorado, which policies provide coverage for

"reasonable and customary expense[s] for necessary medical services furnished within

two years from the date of the accident, because of bodily injury sustained by an

insured person."  Plaintiff claims that this limitation is void and unenforceable and thus

seeks to represent, *inter alia*, a subclass of individuals defined as

> All eligible injured persons, as defined by C.R.S. §
> 10-4-635(2)(a), who are Colorado residents, who have
> received Med-Pay benefits under Defendants' insurance
> policies, and whose claims for payment of medical bills were:
>
> . . . .
>
> (3)(a) only partially paid and the two-year limit policy
> language was cited as an explanation for partial payment, or
> (b) not submitted before the second anniversary of the
> accident and the associated medical records reference the
> covered automobile accident as the basis for treatment . . .

This subclass is referred to as the "two-year limitation subclass."

The substantive basis for all the various claims of the two-year subclass is

section 10-4-635, C.R.S., which requires insurers to offer their insureds medical

payment ("med-pay") benefits.  The statute provides, in relevant part:

> no automobile liability or motor vehicle liability policy insuring
> against loss resulting from liability imposed by law for bodily
> injury or death suffered by any person arising out of the

> ownership, maintenance, or use of a motor vehicle shall be
> delivered or issued for delivery in this state unless coverage
> is provided in the policy or in a supplemental policy for
> medical payments with benefits of five thousand dollars for
> bodily injury, sickness, or disease resulting from the
> ownership, maintenance, or use of the motor vehicle.

§10-4-635(1)(a), C.R.S.  Because the statute itself does not limit the time in which such

claims must be submitted, plaintiff concludes that the policies' restriction contravenes

public policy as an attempt to "dilute, condition, or limit statutorily mandated coverage"

and thus is unenforceable.  *See DeHerrera v. Sentry Insurance Co.*, 30 P.3d 167, 173

(Colo. 2001) (citation and internal quotation marks omitted).  All his claims for relief on

behalf of this class are premised on this contention.

Defendants moved to dismiss the claims of the purported subclass on the

ground, *inter alia*, that the limitation was not void as contrary to public policy.

(*See* **Defendants' Motion To Dismiss the Claims of the Two-Year Limitation**

**Subclass and Memorandum of Law in Support** [#67] filed August 12, 2011.)  I denied

that motion without prejudice and directed the parties to submit supplemental briefing on

the question of the legislative history and intent of section 10-4-635, C.R.S.  (*See* **Order**

**Denying Without Prejudice Motion To Dismiss and Order Requiring Supplemental**

**Briefing** [#93] filed February 29, 2012.)  The present motion is defendant's response to

that order.  I now find and conclude that the limitation on the time in which claims must

be submitted does not subvert the legislative intent of the statute nor contravene the

public policy of Colorado.

A policy exclusion or limitation is not void simply because it narrows the

circumstances under which coverage applies.  *Cruz v. Farmers Insurance Exchange*,

12 P.3d 307, 312 (Colo. App. 2000); *Farmers Insurance Exchange v. Chacon*, 939 P.2d 517, 520 (Colo. App. 1997). "Even within the context of statutorily mandated insurance, insurers are free to include 'conditions and exclusions that are not inconsistent with' Colorado's mandatory insurance laws." *Bailey v. Lincoln General Insurance Co.*, 255 P.3d 1039, 1047 (Colo. 2011) (quoting §10-4-623(1), C.R.S.). That an exclusion or limitation may not *further* the legislative intent of a statute does not render the exclusion or limitation void; instead, the exclusion is void only if it *contravenes* public policy. *See Principal Mutual Life Insurance Co. v. Progressive Mountain Insurance Co.*, 1 P.3d 250, 255 (Colo. App. 1999). Moreover, given Colorado's strong commitment to the freedom of contract, *Shelter Mutual Insurance Co. v. Mid–Century Insurance Co.*, 246 P.3d 651, 662 (Colo. 2011), "[t]he principle that contracts in contravention of public policy are not enforceable should be applied with caution and only in cases plainly within the reason on which the doctrine rests," *Bailey v. Lincoln General Insurance Co.*, 255 P.3d 1039, 1045 (Colo. 2011).

Med-pay benefits are one of the new categories of coverage for economic losses that previously came under the umbrella of the personal injury protection ("PIP") coverages mandated by the Colorado Auto Accident Reparations Act ("CAARA"). After CAARA was allowed to sunset and Colorado moved to a tort-based system in 2004, med-pay coverage became wholly optional. However, this arrangement quickly became unworkable for first responders and emergency medical service providers, whose claims too often fell in the gap between automobile insurance and health insurance deductibles and coverages where med-pay coverage had not been elected. These

providers frequently were forced to resort to the private pay market, where claims for emergency medical services tended to go unpaid.

In order "to try to keep our trauma system whole," Senate Bill 11 was introduced in 2008.  (**Def. Motion App.**, Yohai Decl., Exh. A at 6 (Remarks of Sen. Morse).) Throughout the legislative debates on the bill, reference was repeatedly made to the desire "to shore up the trauma care system."  (*Id.*, Yohai Decl., Exh. A at 11 (remarks of Sen. Morse).)  (*See also, e.g.*, *id.*, Yohai Decl., Exh. A at 8 (remarks of Makayla Jacobs, Quality Healthcare Coalition; *id.*, Yohai Decl., Exh. A at 14-15 (remarks of Sen. Morse); *id.*, Yohai Decl., Exh. B at 21-22 (remarks of Sen. Morse); *id.*, Yohai Decl., Exh. B at 28 (remarks of Sen. Schultheis); *id.*, Yohai Decl., Exh. C at 32-33 (remarks of Sen. Wiens).)[2]

To accomplish that objective, section 10-4-635 makes med-pay coverage mandatory unless insureds specifically opt out in writing.  Insurers are required to reserve $5,000 in med-pay benefits to pay "persons providing medically necessary and accident-related trauma care or medical care."  §10-4-635(2)(a), C.R.S.  "Trauma care" is defined to include treatment provided within "seventy-two hours after the administration of care begins."  §10-4-635(5)(i), C.R.S.  The statute specifies a hierarchy for the reimbursement of med-pay claims.  §§10-4-635(2)(b)(I)–(IV) & 10-4-

---

[2]  Indeed, the title of the bill was "Concerning Funding for the Provision of Uncompensated Trauma Care to Persons Injured in Motor Vehicle Accidents in Colorado and Any Connection There with Establishing an Emergency Responders and Trauma Care Reimbursement Program and Increasing the Fee For Registering a Motor Vehicle to Fund the Program and. . . Recurring Automobile Insurance Policies Issued in the State to Contain Emergency Medical Care Coverage."  (**Def. Motion App.**, Yohai Decl., Exh. A at 20.)

635(2)(c).[3]  Although the statute does not preclude payments other than those related to

the provision of trauma care, *see* §10-4-635(2)(c), C.R.S., it plainly evidences a concern

that trauma care providers receive priority of repayment.  The amount of the reserve

was keyed to the typical claim for services of trauma care and first responders.  (**Def.**

**Motion App.**, Yohai Decl., Exh. D at 44 (remarks of Kelly Campbell of the Property and

Casualty Insurance Association that average med-pay claim in Colorado is $4,000).)

Indeed, one of the bill's sponsors, Senator Morse, noted that the $5,000 reserve

required by the statute "is going to keep the ambulance service whole but it isn't going

to do anything for the hospitals and everybody, you know, six months into the care."

(*Id.*, Yohai Decl., Exh. A at 16.)

---

[3]  Particularly, the statute provides the following hierarchy of claims:

> (I) Benefits shall be paid first to licensed ambulances or air ambulances
> that provide trauma care at the scene of or immediately after the motor
> vehicle accident, including transport to or from a trauma center.

> (II) After payments to providers described in subparagraph (I) of this
> paragraph (b), benefits shall be paid next to trauma physicians that
> provide trauma care to stabilize or provide the first episode of care to the
> injured person.

> (III) After payments to providers described in subparagraphs (I) and (II) of
> this paragraph (b), benefits shall be paid next to trauma centers
> designated as level IV or V pursuant to section 25-3.5-703(4), C.R.S.,
> that provide trauma care to stabilize or provide the first episode of care to
> the injured person.

> (IV) After payments to providers described in subparagraphs (I), (II), and
> (III) of this paragraph (b), benefits shall be paid next to trauma centers
> designated as level I, II, or III or as a regional pediatric trauma center
> pursuant to section 25-3.5-703(4), C.R.S., that provide trauma care to
> stabilize or provide the first episode of care to the injured person.

§§10-4-635(2)(b)(I) - (IV), C.R.S.  The insurer must provide a reserve $5,000 of coverage for these claims
for no more than thirty days after receipt of the accident notice.  §10-4-635(2)(c).  Only after that thirty-day
period ends may any remaining amounts be used to pay claims for reimbursement submitted by other
providers. *Id.*

Given this legislative intent and history, and having reviewed the arguments, authorities, and evidence submitted by the parties, I find nothing to suggest that a two-year limitation on the submission of med-pay claims would offend the intent of the statute or the public policy impelling it.  "In the absence of statutory inhibition, an insurer may impose any terms and conditions consistent with public policy which it may see fit." ***Chacon v. American Family Mutual Insurance Co.***, 788 P.2d 748, 750 (Colo.1990). ***See also Bailey***, 255 P.3d at 1047 ("Even within the context of statutorily mandated insurance, insurers are free to include 'conditions and exclusions that are not inconsistent with' Colorado's mandatory insurance laws.") (quoting §10-4-623(1), C.R.S.); ***Principal Mutual Life Insurance Co.***, 1 P.3d at 255 (exclusion or limitation may not contravene public policy, but need not affirmatively advance goals of statute, either).[4]

All plaintiff's claims in this lawsuit hinge on the viability of its argument that any temporal limitation on the payment of med-pay benefits is void under Colorado law.[5] Because I find to the contrary, I conclude that defendants' motion to dismiss the claims of the two-year subclass must be granted.

---

[4]  Moreover, interpretation of the statute in this manner squares with other general principles of Colorado law.  For example, the precept that "Colorado's insurance laws favor adequate, fair and *timely* resolution of claims," ***Huizar v. Allstate Insurance Co.***,  952 P.2d 342, 344 -345 (Colo. 1998) (emphasis added), adds ballast to an interpretation friendly to limitations on the submission of med-pay claims.  The fact that insureds may decline med-pay coverage also suggests that limitations on such benefits are not unacceptable.  ***See Cruz***, 12 P.3d at 312.

[5]  Plaintiff conceded in his original response to the motion to dismiss that he did not intend to assert a cause of action under § 10-4-636, C.R.S.  Defendants' motion as to that distinct claim therefore is moot.

## IV.  ORDERS

**THEREFORE, IT IS ORDERED** as follows:

1.  That **Defendants Farmers Insurance Exchange and Mid-Century Insurance Company's Supplemental Motion To Dismiss** [#97] filed March 21, 2012, is **GRANTED**;

2.  That plaintiff's claims implicating the two-year limitation subclass are **DISMISSED WITH PREJUDICE**; and

3. That at the time judgment enters, judgment **SHALL ENTER** on behalf of defendants, Farmers Insurance Exchange, an insurer and owner of Mid-Century Insurance Company, a California Corporation; and Mid-Century Insurance Company, a California Corporation, against plaintiff, Lawrence Countryman, on behalf of himself and all others similarly situated, as to the claims implicating the two-year limitation subclass, set forth at sections VIII and IX of the **Rule 23 Complaint and Jury Demand** ¶¶ 140-180 at 33-40 [#2] filed May 7, 2010; provided, that the judgment as to these claims shall be with prejudice.

Dated June 6, 2012, at Denver, Colorado.

BY THE COURT:

Robert E. Blackburn
United States District Judge